# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY McANDREW,          :

        **Plaintiff**        :     **CIVIL ACTION NO. 3:17-0347**

        **v.**           :     **(JUDGE MANNION)**

**MEGAN J. BRENNAN,**        :
**Postmaster General of the**
**United States Post Office**     :

        **Defendant**      :

## <u>MEMORANDUM</u>

This is a gender discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*., by plaintiff, Kimberly McAndrew, in which she alleges that defendant Megan J. Brennan, Postmaster of the United States Postal Service ("USPS"), cancelled her reassignment to a different position with the Post Office based on her gender and gave the position to a male employee. The USPS argues that plaintiff's gender was not the reason why her transfer was cancelled and that it erred by applying the incorrect "pecking order" of applicants for the position.

Presently pending is the motion for summary judgment of the USPS, (Doc. 9), pursuant to Fed. R. Civ. Pro. 56, regarding plaintiff's sole claim in her complaint, (Doc. 1), i.e., her Title VII claim. Based upon the following discussion, USPS's motion for summary judgment will be **GRANTED**.

## I.    PROCEDURAL HISTORY

Plainitff filed her complaint under Title VII on February 24, 2017. (Doc.

1). Plaintiff's complaint raises one count, a gender discrimination claim under Title VII against defendant Brennan, in her capacity as the Postmaster General of the USPS.

On April 30, 2018, defendant filed a motion for summary judgment, pursuant to Rule 56, regarding plaintiff's Title VII claim. (Doc. 9). On May 14, 2018, defendant filed her brief in support and her statement of facts with exhibits.[1] (Docs. 10-12). On May 17, 2018, plaintiff filed her response to defendant's statement of facts with exhibits and her brief in opposition to defendant's motion. (Docs. 13-14). Defendant filed a reply brief on May 31, 2018. (Doc. 18).

This court has jurisdiction over plaintiff's federal claim pursuant to 28 U.S.C. §1331 and 42 U.S.C. §2000e–5(f)(3). Venue is proper in this court under 28 U.S.C. §1391.

## II. MATERIAL FACTS[2]

During all relevant times, plaintiff was an employee of the USPS as a

---

[1]The court granted defendant's *nunc pro tunc* motion to accept her statement of facts along with her exhibits, including the signed Declaration of Terry LeFevre, (Doc. 12), as timely filed since the court can discern no unfair prejudice to the plaintiff in doing so. (Doc. 17). Thus, plaintiff's objection to the court's consideration of defendant's statement of facts and LeFevre's Declaration based on timeliness is denied.

[2]The material facts are derived from defendant's statement of facts and plainitff's response to the statement, as well as the exhibits filed by the parties. The court only includes facts material to the issues in the case supported by the record, and it does not include legal conclusions.

sales, service and distribution associate at the Post Office located in Wapwallopen, Pennsylvania. As a postal employee, plaintiff was a member of and covered by the APWU. Plaintiff was also a member of the "Clerk" craft.

In June of 2014, plaintiff searched for non-traditional, full-time ("NTFT") positions with the USPS and, she utilized eReassign, a computerized program created to facilitate the process of postal employees submitting requests for reassignment to apply for them.

On November 20, 2015, plaintiff requested a transfer to the Laborer Custodial Position ("LCP") in the Pittston Post Office via eReassign. The LCP was a non-skilled position and is a maintenance craft position.

In 2015, Meredith Kerns was a Staffing Specialist, or "the transition coordinator" at the District Office for the USPS. Kerns testified that at the District Office, the USPS does not "input positions into [eReassign]" for the maintenance craft. As such, Kerns testified that when plaintiff requested a transfer through eReassign for the LCP, she was not applying for the actual position, rather, she was formally requesting a transfer in the Pittston Post Office. Kerns testified that, in order for an employee to request a different job within the same installation/location, he or she must submit a handwritten note that he or she is interested in a different craft within the installation.

On December 10, 2015, the Post Office posted a Notice of Intent to Fill a Vacant Duty Assignment for a custodial position at the Pittston Post Office location, under Job #71502766. The closing date for the Notice of Intent to Fill a Vacant Duty Assignment was December 15, 2015.

On December 11, 2015, Kenneth Riley, a City Carrier at the Pittston Post Office submitted a handwritten request for the LCP. Riley's note stated: "I Kenneth M Riley wish to be considered for the custodian position available at Pittston Post Office Job #71502766. I have already taken test scored 110[,] 100 on test [and] 10 points for 30% disabled veteran."

The test that Riley was referring to was the Custodial Maintenance (916) Examination. Plaintiff had never taken the Custodial Maintenance (916) Examination.

On December 15, 2015, Kimberly Hughes, an employee of the USPS at the Pittston Post Office also submitted a handwritten note for the LCP.

On February 23, 2016, Kerns sent an email to Leticia Vazquez-Yenzer, Postmaster at the Pittston Post Office, and advised Vazquez-Yenzer that she (Kerns) had assigned plaintiff to Vazquez-Yenzer in eReassign and requested her attendance, safety and supervisor evaluations. Kerns did not know plaintiff prior to her application for the LCP, but Vazquez-Yenzer did know her.

Also, on February 23, 2016, Kerns sent a letter to plaintiff and advised her that the USPS was considering her for the LCP in Pittston. In her letter, Kerns requested that plaintiff contact her within ten days to advise of her interest in the LCP.

On February 23 and February 26, 2016, Kerns asked Vazquez-Yenzer whether she would accept plaintiff for the LCP based on her attendance, safety and supervisor evaluation records.

On February 29, 2016, Vazquez-Yenzer sent an email to Kerns

4

indicating that she was accepting plaintiff for the LCP.

On March 2, 2016, Kerns sent plaintiff a memorandum with the subject, "Voluntary Reassignment", and she advised plaintiff that the Post Office had approved her request for voluntary reassignment to the LCP in Pittston. The effective date of plaintiff's reassignment was April 16, 2016.

On March 3, 2016, Vazquez-Yenzer emailed Kerns and wrote:

> I have a question what is going to happen to the PSE [non-career employee] that is currently in the custodian position [?] he did apply and took the Test for CCA and is on my hire list because he fears that he is going to lose his job.

On March 17, 2016, Kerns sent an email to Christine Margalis, plaintiff's supervisor, and to Vazquez-Yenzer stating the following:

> We just received word this morning from the Eastern Area that the pecking order to fill the residual custodian positions that we were following was not in the correct order. They sent us the proper steps and now we must rescind [plaintiff McAndrew's offer] for the Custodian Position [LCP] in Pittston.

Consequently, on March 17, 2016, Kerns sent a letter to plaintiff explaining that her request for reassignment had been placed on hold and that her reassignment to the LCP had been canceled because the USPS mistaken failed to follow "the correct order in considering requests for [the LCP]." The USPS then awarded the LCP to Riley.

Riley was employed as a City Carrier in the Pittston Post Office when he submitted a handwritten request for the LCP on December 11, 2015, and he was considered "within installation" for that office. Plaintiff states that Riley as a City Carrier was a member of the NALC letter carrier's union and not the

5

APWU union to which plaintiff belonged. As such, plaintiff contends that Riley was not entitled to preference over her for the LCP.

Kerns testified that the reason that the USPS cancelled plaintiff's reassignment was because the correct order in considering requests for the position had not been followed when they assigned plaintiff to the LCP. Kerns also testified that when she realized that the USPS failed to follow the correct pecking order for the LCP, she "probably asked [Vazquez-Yenzer] if they had any in office requests from other employees within the installation. And...Miss Hughes... and Mr. [Riley] also had [ ] handwritten request[s]."

On April 21, 2016, Edward R. Boutin, USPS EEO ADR Specialist, emailed Julie Oswald, an Operations Support Specialist with the USPS who was temporarily filling in for Kerns while she was on medical leave, and stated:

> Can you give me a call about an EEO claim raised by Kimberly McAndrew regarding a Custodian position? She states that she was awarded the position and that award was then rescinded so that the position could be awarded to a male.

In response to Boutin's inquiry, Oswald emailed him on April 22, 2016, detailing the following pecking order that was required to fill the custodial position in Pittston:

> Maintenance to Maintenance
> APWU to Maintenance- within the installation with the exam
> APWU to Maintenance – within the installation without the exam
>
> APWU to Maintenance – eReassign outside the installation
> Other than APWU date order within the installation with the exam
> Other than APWU date order within the installation without the exam

6

Other than APWU eReassign outside the installation.

Plaintiff fell into the category of "APWU to Maintenance – eReassign outside the installation", which was fourth in the pecking order stated in Oswald's April 22, 2016 email, and plaintiff contends that Riley fell into the fifth category stated in the email.

The pecking order specified in Oswald's April 22, 2016 email was based on the pecking order stated in a February 10, 2016 email from Maryann Raynish to Kori Sipe.

Subsequently, Oswald averred in an Affidavit that she had "no independent knowledge concerning or experience with the 'pecking order' of filling a custodial position", and that "[t]he information contained in the email that [she] prepared on April 22, 2016, regarding the pecking order for filling a custodial vacancy, was based off of a document provided to me."

Kerns testified that the pecking order stated in the February 10, 2016 email and the April 22, 2016 email was incorrect and, that the correct pecking order was clarified by LeFevre. Kerns also testified that the decision to cancel plaintiff's reassignment was "not at all" related to her gender, and that, before plaintiff's scheduled transfer, the USPS was permitted to cancel her transfer pursuant to USPS policy and the Collective Bargaining Agreement between the union and the USPS.

Vazquez-Yenzer testified why the USPS canceled plaintiffs transfer and stated that "there was a mistake made in the process for reassignment. [The reassignment] was done wrong, and [the job] was supposed to be offered to

someone in the facility [Pittston Post Office] first." Based on her own understanding of the proper pecking order, Vazquez-Yenzer also stated that the order contained in Oswald's April 22, 2016 email was incorrect.

Plaintiff testified that she did not speak to anyone at the USPS, including Vazquez-Yenzer and Kerns, regarding the specifics of why Riley received the LCP after her transfer to the position had been canceled. Nor did plaintiff ever ask Kerns why she thought the LCP was "taken away" from her. Further, during her deposition, plaintiff testified that nobody told her that the reason she did not receive the LCP is because she is female. Plaintiff did however testify that the maintenance craft with the USPS is 96% male.

Additionally, when asked about the facts that supported her allegation that she did not receive the LCP due to her gender, plaintiff stated:

> Just the fact that I was awarded the position, the postmaster knew that I was coming to that office, supposedly was glad to have me after having worked with her previously, and they just out of the blue, weeks later, have the job taken away from me and given to [Riley].

Defendant submitted the Declaration of LeFevre as support for her contention that Riley was entitled to the LCP. LeFevre is a Headquarters Labor Relations Specialist for the USPS, Contract Administration (APWU), and he is involved with the implementation and interpretation of the collective bargaining agreement, including its relationship to the maintenance craft of the APWU.[3]

---

[3]In addition to her timeliness objection, which the court denied, plaintiff also objects to any consideration of LeFevre's Declaration, (Doc. 12), for

LeFevre avers that under the Joint Contract Interpretation Manual ("JCIM") 2012 between the USPS and the APWU, the proper order for filling vacant maintenance positions with the USPS is as follows:

> When Maintenance Craft employees who have requested a transfer are considered first:
>> Maintenance Craft employees who are already qualified for the position in question;
>> Maintenance Craft employees who are not qualified for the position in question but have been afforded an opportunity to qualify under the provisions for qualifying for transfer;
> If in-service procedures are considered first:
>> Priority consideration to career Maintenance Craft employees using the in-service register in score order;
>> Other career postal employees, regardless of craft or position, on the in-service register, in score order.

According to LeFevre, the phrase "in-service" as used in the JCIM relates to a single USPS installation/location. But he stated that meaning can be extended to a larger area through an approval process. He further

---

present purposes by arguing that he is really an expert witness and defendant failed to disclose him as such by the expert disclosure deadline. The court finds that LeFevre is not rendering an expert opinion in his Declaration. Rather, he is an employee of the USPS and, based on his experience and personal knowledge in dealing with the relevant documents as part of his job, he is simply averring to the correct order for filling vacant maintenance positions with the USPS based on the Joint Contract Interpretation Manual ("JCIM") 2012 between the USPS and the APWU. Defendant also points out that LeFavre can testify as a Rule 30(b)(6) corporate designee of the USPS.

Also, contrary to plaintiff's claim that she was not disclosed LeFevre's name, defendant's evidence shows that during discovery defendant identified LeFevre as a person "knowledgeable about the contracts between USPS and APWU" and, that defendant identified LeFevre as an individual "likely to have information bearing on the claims and defenses asserted in plaintiff's lawsuit." (Doc. 18-4).

Thus, the court will consider LeFevre's Declaration and deny plaintiff's objection to it.

indicated that a custodial position with the USPS is a position in the Maintenance Craft.

On July 19, 2010, the USPS and the APWU entered into a Memorandum of Understanding ("MOU"), regarding the In-Service Custodial Register Selection Process. The MOU provides:

> When there is a need to establish an in-service custodial register or to replenish an existing in-service custodial register, an announcement is made giving career employees the opening and closing dates that they can apply. Employees who respond to the announcement are not given Examination 916, but their names are merged onto the in-service register in the following order:
>
> > 1. Current Maintenance Craft employees who previously passed Examination 916 in score order.
> > 2. Current Maintenance Craft employees who have not passed Examination 916 in maintenance installation seniority order.
> > 3. Other American Postal Worker's Union (APWU) craft employees who previously passed Examination 916 in score order.
> > 4. Other APWU craft employees who have not passed Examination 916 in their respective craft installation seniority order.
> > 5. Other craft employees who previously passed Examination 916 in score order.
> > 6. Other craft employees who have not passed Examination 916 in installation seniority order.

On September 7, 2011, the USPS and APWU extended the MOU indefinitely.

LeFevre avers that based on agreements between the USPS and the APWU, "an office must fill an available custodial position with craft employees (in the order described above) within a location/installation prior to the filling

of the position with a non-Maintenance craft employee outside of the location/installation."

LeFevre's Declaration shows that under the CBA, Riley fell into category 5, i.e. "other craft employees who previously passed Examination 916 in score order." According to LeFevre, the CBA and MOU required that the USPS award the LCP to Riley over plaintiff despite their union membership.

With respect to why Riley was eventually selected for the LCP over plaintiff, Kerns testified, "It's not a matter of male, female. This is a matter of black and white. You follow the contract….I follow a pecking order, a contract. Everything I do is followed that way."

On August 19, 2017, plaintiff left her employment with the USPS.

Plaintiff filed a Complaint of Discrimination with the EEO alleging that she was discriminated with respect to Riley's selection for the LCP based on her gender. The EEO conducted an investigation regarding plaintiff's complaint and it found that the evidence did not support a finding of gender discrimination.

During the investigation, Vazquez-Yenzer along with Area Complement Coordinator Maryann Raynish provided statements for the USPS. Vazquez-Yenzer explained that the USPS had to rescind the job offer to plaintiff since the process was done improperly, as detailed above. In her Supplemental Affidavit, Raynish averred that when Kerns awarded the LCP to plainitff, Kerns relied on Raynish's February 10, 2016 email which contained the incorrect pecking order for the job. Raynish also averred that

she received the incorrect pecking order from Fitzpatrick, who worked for the USPS as a Labor Relations Specialist.

Also, during the EEO Investigation, Fitzpatrick was asked to respond to the following: "Maryann Raynish, RMO, alleges that an email [she] sent on February 10, 2016, [*see* Doc. 18-3] containing the improper steps, was sent to you asking to confirm if those were the steps to be followed when reassigning employees to the maintenance craft." In his response Affidavit, Fitzpatrick averred that "[t]his email was sent to me, but I did not respond because I knew that Barb Kirchner already asked Terry LeFevre to identify the correct steps in reassigning employees. In reviewing the email now, I can confirm that the steps are incorrect. Barb Kirchner is the HR manager and Terry LeFevre is Labor Relations at HQ's and he covers maintenance." Fitzpatrick also indicated that plaintiff's sex was not a factor when the email was sent to him asking to confirm the steps to be followed when reassigning employees to the Maintenance craft. (Doc. 18-2).

On September 14, 2016, Kerns emailed Barbara Kirchner, the Manager of Human Resources in the Central Pennsylvania District for the USPS. In her email, Kerns explained the confusion regarding the pecking order for the LCP and stated:

> From what I remember I believe [Raynish] and [Kori Sipe] were emailing about the pecking order with someone like [Fitzpatrick] or a labor person from Eastern Area involved, then I got involved because I had just taken over the eReassign for maintenance. The last email that I saw had a pecking order, I used that to start to fill the custodial positions. After [Sipe] reviewed it and I got a call from one of the unions telling me it was incorrect I sent for

12

confirmation, [Raynish] tried to get confirmation for us from Labor I believe in the Eastern Area.

## IV. DISCUSSION[4]

Plaintiff raises a gender discrimination claim under Title VII against the USPS through defendant Postmaster. Defendant contends that she is entitled to summary judgment on plaintiff's gender discrimination claim because there are no genuine issues of material fact that the cancellation of plaintiff's reassignment to the LCP at the Pittston Post Office was not related to her gender, rather, a mistake was made by the USPS hiring personnel regarding the proper pecking order for the position.

Plaintiff contends that there are factual disputes with respect to her gender discrimination claim precluding summary judgment for defendant. Plaintiff points out that the LCP was posted through eReassign and she applied for the position through eReassign. She also contends that after she requested the LCP through eReassign, she received this position. Plaintiff further states that she put in her request for the LCP prior to Riley or Hughes. Plaintiff also states that neither Riley or Hughes were APWU workers as she is and that they were not entitled to any preference over her in the selection for the LCP. Plaintiff states that Riley was a City Carrier with the USPS and he was a member of the NALC union and, that defendant overlooked the

---

[4]Since the proper standard regarding a summary judgment motion under Fed. R. Civ. P. 56(c) is stated in the briefs of the parties, the court does not repeat it herein. *See also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).

correct pecking order, revoked her assignment to the LCP due to her gender, and then gave the position to a man. Plaintiff also contends that her "status as an APWU worker trumps any entitlement of Ken Riley, a non APWU worker, rights to any position opening in the maintenance department." Thus, plaintiff states that these facts show defendant treated a male employee more favorable than her, and that based on the correct pecking order for the LCP, which was specified in Oswald's April 22, 2016 email, she should have kept the position.

In [Howard v. Blalock Elec. Service, Inc., 742 F.Supp.2d 681, 689-90 (W.D.Pa. 2010)](), the court explained:

> Title VII's anti-discrimination provision provides that it is an "unlawful employment practice" for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ...." 42 U.S.C. §§2000e–2(a)(1). [In Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 63–69, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)](), the United States Supreme Court recognized that an employer discriminates against an employee because of his or her sex when it engages in sex-based harassment that is sufficiently "severe or pervasive" to alter the "terms, conditions, or privileges" of his or her employment.

Section 2000e-2(m) of Title VII (42 U.S.C.) provides, in pertinent part, that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." As such, Title VII "prohibits employers from discriminating against individuals on the basis of their race, color, religion, sex, or national origin." [Burton v. Teleflex, Inc., 707 F.3d 417, 426 n. 7 (3d Cir.]()

2013) (citing 42 U.S.C. §20002-2(a)(2)).

In Jones v. Southeastern Pa. Trans. Auth., 796 F.3d 323, 327 (3d Cir. 2015), the Third Circuit stated:

> To state a prima facie case of gender discrimination [under Title VII], [plaintiff] [is] required to show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) [she suffered] an adverse employment action; and (4) the circumstances of the [adverse employment action] give rise to an inference of discrimination.

*See also* Page v. Trustees of Univ. of Pennsylvania, 222 Fed. Appx. 144, 145 (3d Cir. 2007); *Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 410 (3d Cir.1999).

The Court in Burlington v. News Corp., 759 F.Supp. 2d at 592-593 (E.D.Pa. 2010), stated:

> Although showing that similarly situated coworkers were treated more favorably than the plaintiff is one method of satisfying the final element of a prima facie case of discrimination, it is not the only one. The Third Circuit has explained that although some circuits have required plaintiffs to make such a showing in discrimination cases, "that is not the current law in this or the majority of the circuits." *Sarullo,* 352 F.3d at 798 n. 7 (citations omitted). Indeed, the Third Circuit has counseled in *Sarullo* and elsewhere that the prima facie case is intended to be a flexible standard. *See id.* at 797-98 ("[T]he prima facie test remains flexible and must be tailored to fit the specific context in which it is applied." (citing *Geraci v. Moody–Tottrup, Int'l, Inc.,* 82 F.3d 578, 581 (3d Cir. 1996))); *Weldon v. Kraft, Inc.,* 896 F.2d 793, 798 (3d Cir. 1990) ("The framework set forth in *McDonnell Douglas,* which begins with proof of a prima facie case, was 'never intended to be rigid, mechanized, or ritualistic.'" (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978))). The Third Circuit has stated that to establish a prima facie case, it is sufficient for a plaintiff to adduce evidence that "establishes a causal nexus between the harm

suffered and the plaintiff's membership in a protected class, from which a juror could infer, in light of common experience, that the defendant acted with discriminatory intent." *Anderson v. Wachovia Mortg. Corp.,* 621 F.3d 261, 275 (3d Cir. 2010) (discussing prima facie case in §1981 context); *Sarullo,* 352 F.3d at 798 (plaintiff "must establish some causal nexus between his membership in a protected class" and the adverse employment decision to establish a prima facie case of discrimination in Title VII case).

Also, "the burden to establish a prima facie case is not an onerous one." *Young v. St. James Management, LLC,* 749 F.Supp. 2d 281, 288 (E.D. Pa. 2010). The elements are dependent on the facts of the specific case. *Id*. (citation omitted). The plaintiff's burden of proof is a preponderance of the evidence standard. *Sheridan v. E.I. DuPont de Nemours and Company,* 100 F.3d 1061 (3d Cir. 1996).

Plaintiff contends that she has shown direct evidence of discrimination in this case. She states that "Defendants cancelling the correct appointment of a female and replacing the selection with a male, who was not as qualified according to the pecking order, is blatant and direct gender discrimination." Plaintiff ignores defendant's evidence which shows that Riley was more qualified than her based on the pecking order which defendant's evidence shows was the correct one and based on the fact that Riley successfully passed Examination 916 and she did not. Based on the above stated material facts, the court does not find that plaintiff presented any direct evidence of gender discrimination. "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of the fact [in issue] without inference or presumption." Terrell v. Main Line Health, Inc., 320 F.Supp.3d

644, 656 n. 15 (E.D.Pa. 2018).

Moreover, as the court in Carroll v. Lackawanna County, 2015 WL 5512703, *5 (M.D.Pa. Sept. 16, 2015), stated "[g]ender discrimination claims brought under Title VII, the PHRA, and the Equal Protection Clause are governed by the *McDonnell Douglas* burden-shifting framework." (citing McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973)). *See also* Lanza v. Donahoe, 2013 WL 5477160, *5 (D.N.J. Sept. 30, 2013). The court in Carroll, 2015 WL 5512703, *5, stated that "[u]nder the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of employment gender discrimination [by showing that]: (1) she is within a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) [ ] a similarly situated individual outside the plaintiff's protected class was treated more favorably." (citations omitted). Also, "[t]he determination of whether a prima facie case has been made [regarding gender discrimination claims brought under Title VII] is a legal one for the court to decide." *Id*. (citation omitted); *see also* Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410–11 (3d Cir. 1999).

Defendant argues that plaintiff did not establish a prima facie case of gender discrimination. She also argues, that even if plaintiff did establish a prima facie case, she failed to rebut the USPS's legitimate, non-discriminatory reasons for canceling her transfer to the LCP.

It is undisputed that plaintiff, a female, is within a protected class. *See* Lanza, 2013 WL 5477160, *6. Further, it is undisputed that plaintiff was

qualified for the LCP especially since she was initially awarded reassignment to the position. However, defendant contends that plaintiff failed to establish a prima facie case since she did not produce any evidence that shows a causal nexus between the cancellation of plaintiff's reassignment to the LCP and her membership in a protected class from which a juror could infer that defendant acted with discriminatory intent. "Discrimination may be inferred when a similarly situated employee who is not within the protected class was treated more favorably than the plaintiff." *Id*. at *5.

The court finds that the undisputed evidence shows that plaintiff's gender had no connection with the reason why the USPS canceled her reassignment. As defendant explains the undisputed evidence shows:

> Kerns pulled McAndrew's name from eReassign after McAndrew applied for a transfer and Vazquez-Yenzer accepted McAndrew after reviewing her records. Kerns only canceled the reassignment after she became aware that she had applied the incorrect pecking order when she referred McAndrew to Vazquez-Yenzer, when Riley had preference for the [LCP] under the applicable CBA and MOU.

Plaintiff argues that the fact Riley was not a member of the APWU as she was entitled her to the position over Riley, and that Fitzpatrick indicated that the correct pecking order was followed in the first instance which required her to have been awarded the LCP. Plaintiff also states that LeFevre's interpretation of the JCIM differs from the interpretation Fitzpatrick who handled appointments in this district and who indicated that the selection for the LCP was pursuant to the above stated pecking order contained in Oswald's April 22, 2016 email and not the JCIM.

18

Additionally, plaintiff states that "Defendants (sic) have a history of favoring males for the position of custodian and in fact, not one women was a custodian at the Pittston Office since Vazquez-Yenzer's tenure." She also states that according to Vazquez-Yenzer, "[t]he men out number the female custodians in the Wilkes-Barre Office."Unfortunately for plaintiff none of the cited evidence show that the USPS based any of its decisions in this case involving the Pittston Post Office, including its cancellation of plaintiff's reassignment to the LCP and its award of the position to Riley, on plaintiff's gender.     Significantly, plaintiff repeatedly ignores the fact that Fitzpatrick averred in his Affidavit to the EEO that the pecking order contained in Oswald's April 22, 2016 email was incorrect and that he deferred to LeFevre regarding the identification of the correct steps in reassigning the applicable employees. It is thus clearly shown that the proper order for filling vacant maintenance positions with the USPS was the order stated by LeFevre, which indicated that Riley was entitled to the LCP. Further, there is simply no evidence that any of the USPS's employees involved in the reassignment decision regarding the LCP took any actions due to plaintiff's gender. Even if plaintiff is correct that she was awarded the transfer to the LCP based on the correct pecking order she contends applied, which the court finds is not supported by the evidence, and even if Riley belonged to the NALC union, plaintiff has failed to show that her gender was in any way connected to the USPS's decision to cancel her reassignment and to award the job to Riley.

As defendant states, plaintiff fails to "meet her burden of persuasion

19

because she cannot show that USPS treated other similarly situated employees outside of [her] protected class, i.e. males, differently." As defendant explains the undisputed evidence shows that:

> [plaintiff] and Riley are not similarly situated because, at the time that USPS posted the [LCP], they held different positions and worked at different facilities. Riley held a City Carrier position at the Pittston Post Office [the relevant installation], whereas [plaintiff] was a Sales Services Distribution Associate at the Wapwallopen Post Office. Additionally, Riley had taken Examination 916 with a final score of 100, whereas [plaintiff] never took Examination 916.

Thus, the court finds that plaintiff failed to establish a prima facie case of gender discrimination since she has not produced evidence to meet her burden on the final element. Plaintiff has failed to submit enough evidence from which a factfinder could reasonably conclude that defendant and the USPS treated her less favorably than similarly situated male employees.

Moreover, assuming *arguendo* that plaintiff established a prima facie case of gender discrimination, she has not shown that defendant's legitimate non-discriminatory reason for canceling her reassignment to the LCP was a pretext for discrimination.

As discussed above, the defendant has clearly met her burden by submitting a significant amount of evidence to show that the USPS's proffered reason for canceling plaintiff's reassignment to the LCP and awarding the job to Riley, i.e., a mistake was made with respect to the proper pecking order for the job, was a legitimate nondiscriminatory reason for canceling plaintiff's reassignment. The issue at this stage of the analysis is not whether the USPS

actually made a mistake in the pecking order for the LCP, but whether the actual or perceived mistake constitutes a legitimate, nondiscriminatory reason for the USPS's decision to cancel plaintiff's reassignment. *See* Terrell, 320 F.Supp.3d at 658. No doubt that a mistake as to the proper pecking order for a governmental position is a legitimate, nondiscriminatory justification for canceling the reassignment of one employee and awarding the position to another employee who had priority to the position.

Next, the court considers pretext and the burden of persuasion returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for discrimination. *See* Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

Plaintiff states that she has established pretext since "according to the USPS' own policies and procedures, she, a female, should hands down [have] obtained the position" and, since the USPS' changed the selection criteria and departed from the correct pecking order and the relevant factors that should have been considered by its decisionmakers in order to give the LCP to Riley.

The court finds that the undisputed facts discussed above show that plaintiff failed to meet her burden to show that the USPS' proffered legitimate, non-discriminatory reason for the cancellation of her reassignment to the LCP was pretextual. There is no evidence that defendant changed the selection criteria for the LCP. Rather, the undisputed evidence clearly shows that the incorrect pecking order was first utilized. The evidence then shows that under

21

the proper pecking order for the LCP, the selection of a qualified craft employee inside of the Pittston Post Office who had applied for the position and passed Examination 916, i.e., Riley, had preference to the position over an employee outside the stated Post Office, i.e., plaintiff. There is also no dispute that plaintiff did not take Examination 916 as Riley did.

In his Declaration, LeFevre averred that under the CBA, Riley fell into category 5, namely, "other craft employees who previously passed Examination 916 in score order", and indicated that regardless of membership in the APWU, the CBA and MOU required that the USPS award the LCP to Riley over plaintiff. Thus, contrary to plaintiff's assertion, defendant did produce evidence that properly shows the pecking order stated in Oswald's April 22, 2016 email which lead to her selection for the LCP was not the proper pecking order.

Plaintiff also claims that Vazquez-Yenzer's inquiry regarding her concern about a male employee in her Post Office prompted a change in the criteria system with the USPS for the LCP. Vazquez-Yenzer however testified that she merely asked a question whether a non-career employee in her Post Office named John (no last name stated) was going to have the opportunity to apply for the LCP since he had asked her if he was going to lose his position when the LCP was filled. Vazquez-Yenzer did not testify that the selection criteria for the LCP was changed to accommodate any male employee. Rather, she explained that the incorrect pecking order was originally used to select plaintiff and that when Kerns was later advised of the

correct pecking order, plaintiff's transfer was canceled and the LCP was awarded to Riley since he had preference to it over plaintiff.

## V.    CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment with respect to the plaintiff's Title VII[5] gender discrimination claim is **GRANTED**. An appropriate order will follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: February 13, 2019**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-0347-01.wpd

---

[5]Since the court finds merit to defendant's summary judgment motion under Rule 56 based on the undisputed facts, it will not consider defendant's alternative contention that the court should dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b).